Ashburn, J.
1. Was it error to permit Joseph Davey to testify, under the circumstances in which the alleged, conversation, or rather declarations, took place.
As alleged in the petition and disclosed by the testimony,, the defamatory words, as testified to by Davey, had in them, no element of a confidental relation as between husband, and wife. The language used by defendant was addressed to the wife in the presence of her husband. There was a known third party, John Gr. Duvall, present, which would,, uuder any circumstances, render the husband a competent witness. Uttering the defamatory words to or in the presence of the husband was a publication, and to one vitally interested in their truth, and any damaging effect suck words were likely to have upon the character of his wife.. We think the husband was a competent witness.
II. Did the court err in excluding evidence directly showing acts of sexual intercourse by Hannah Davey,, while single, with Hartman and others?
This class of evidence was, under the pleadings, properly excluded. Its direct tendency was to prove a justification. If credited, it would have shown her guilty of a want of chastity — proved the truth of the words.
It has long been the settled rule, and recognized in the practice of this state, that under the general issue, to-which the general denial provided in the code is, in effect,. *610 'in this class of cases, practically analogous, a. justification •can not be proved. Townsend on Slander, etc., § 409; Eoulkard’s Starkie on Slander, etc., § 667. Where the testimony proposed to be offered can have no other effect than to make apparent the guilt of the plaintiff, and prove the truth of the words spoken, thereby necessarily tending ■to justify the speaking of the words, and not merely to mitigate damages, the facts relied on, and proposed to be •offered in evidence, must be specially pleaded, and can not be permitted to go in evidence under the general denial. Hayward v. Foster, 16 Ohio, 88.
III. Hid the court err in refusing to allow defendant to prove, in mitigation of damages, plaintiff’s general reputation for chastity?
This question is not without difficulty. The rule, as gathered from the text books, is by no means uniform, and the reported decisions of other states and countries are in •conflict on this point. Our own supreme court, in Dewitt v. Greenfield, 5 Ohio, 225, limits.the inquiry to the “ general good or bad character of the party” The reason of the rule is said to be, “ A man is supposed to be always ready to sustain his general character, but not to meet particular reports.” This rule is too contracted to meet all eases. When a party is charged with a particular vice of character, that particular element of character is put in issue by the general denial; and the party, knowing that his char.aeter is assailed in a particular respect, must be held as ready to sustain his general character in the respect in which it is attacked, as to sustain it as a whole.
It is said in Dewitt v. Greenfield, supra, “ but spreading a plea of the truth of the words on the record, in justification, is always an aggravation of the damages, if not proven.” This rule of damages has been changed by the casé of Rayner v. Kinney, 14 Ohio St. 287. The rule that inquiry as to reputation must be confined exclusively to general good or bad character, is not sound. Indeed, it may be questioned whether the learned judge, who wrote the opinion in that case, contemplated that the rule, *611 as announced, should cover all cases where character is in issue. If he did, the opinion contains evidence of, and authority for, a broader rule. He says, “ under the general issue, the defendant, in mitigation of damages, may prove that the plaintiff, at the time of speaking the words, was under a general suspicion of having been guilty of the charge imputed to him.” This we think the true rule, and renders the general doctrine of the case untenable.
Plaintiff’s character for chastity was in issue under the general denial. It was the object of defendant’s assault. Injury to it was the gravamen of complaint. The action was brought for its vindication. She claims, in her petition, that prior to the speaking of the slanderous words, by defendant, “ she sustained a good name and character among her neighbor’s and acquaintances for chastity, moral worth, and integrity,” and was never suspected of “ unchaste conduct,” etc.
Touching this point, 1 Greenleaf on Evidence, § 55, .states the modern rule to be, “ But it seems that the character of the party, in regard to any particular trait, is not in issue, unless it be the trait which is involved in the matter charged against him.” Taylor, in his work on evidence, vol. 1, § 334, p. 365, states the rule thus: “ It seems, however, that here, as in other cases where witnesses to ■character are admitted, evidence must be confined to the particular trait which is attacked in the alleged libel; and, as to this, it can only furnish proof of general reputation, and must, by no means, condescend to particular acts of bad conduct.” Foulkard’s Starkie on Slander, etc., § 714; Eoulkard’s Law of Slander, etc. (4th ed.) 539; Bell v. Parke, 11 Irish Com. Law, 413-420; Earl of Leicester v. Walter, 2 Camp. 251; Turner v. Foxall, 2 Cranch C. C. 324; - v. Moor, 1 M. & S. 285.
While we find a conflict of authority on this point, the modern cases are founded on better reason, and clearly admit the competency of general reputation in' regard to the trait of character assailed. An examination of the cases we think would clearly show, that the apparent conflict in *612 the decisions, arises principally from the nature of the* pleadings, or single nature of the accusation. But we-will not pursue this branch of investigation, because we-think, upon principle, a general reputation of want of good character in the very particular in which it has been assailed,, is competent evidence in mitigation of damages.
The plaintiff seeks a compensation for a loss of character,, not her reputation for truth, integrity, sobriety, or industry,, but in respect to her reputation for chastity. That alonéis claimed to have been soiled. That is put in issue. The-law presumed it good, and therefore to her valuable. If her character for chastity has sustained no damage, she is-entitled to but little or no compensation. If her general reputation for chastity was notoriously bad when the alleged slanderous words were spoken, could it be that the pecuniary injury sustained by her, from the wrongful act’ of defendant, is as great as it would have been if her general reputation for chastity had been untarnished?
That evidence of general reputation, as a woman, is admissible in mitigation of damages is not disputed. Such was the theory of the court below, but it went further, and’ ruled that evidence of the general reputation for chastity was not admissible. It seems to us the reason is much stronger for allowing evidence affecting her general character in respect to the trait that has been assailed. Reputation is complex — made up of many things. A woman may possess many virtues, consequently a fair, or even good general reputation as a woman, and yet be notorious-for some one vice. If the defamer assails all her virtues she sustains an injury, if only her other vice is assailed theinjiiry is less.
Plaintiff asserts in her complaint that her standing in society, as a virtuous woman, has been assaulted and damaged,, and that her character for chastity was, prior thereto, irreproachable. It is the element of chastity in her character which she claims has been damaged. Its value then becomes the proper subject of inquiry — not her truthfulness,, hér integrity, her sobriety, her industry — but her chastity *613 alone. If that is worthless in the general market of public estimation, it would seem strange indeed, if defendant might not show, in mitigation of damages, that it was generally reputed of little value.
The court erred in refusing to allow defendant to prove plaintiff’s general reputation for chastity was. bad.
IY. We think the court ruled correctly in refusing to allow a cross-examination of witness Carnes on the subject proposed by defendant. The witness was examined by plaintiff as to her general reputation alone. If the character of plaintiff’s associates could be used in any aspect of the case, it was evidence in chief, and not admissible on cross-examination. Facts not admissible in chief, as a defense, were sought to be introduced indirectly, under the guise of impeaching the witness. We know of no rule of evidence that would authorize the proposed cross-examination of the witness.
Reversed and remanded to the court of common pleas for further proceedings.
Wright, J., dissented from the second proposition of the syllabus.